**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| GEORGE SCOTT, | 3:07-CV-507-ECR (RAM) |
| Plaintiff, | **REPORT AND RECOMMENDATION** |
| vs. | **OF U.S. MAGISTRATE JUDGE** |
| CORRECTIONAL OFFICER MOORE, et al., | |
| Defendants. | |

This Report and Recommendation is made to the Honorable Edward C. Reed, Jr., Senior United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4.

Before the court is Defendants' Motion to Dismiss (Doc. #6). Plaintiff has opposed (Doc. #9), and Defendants have replied (Doc. #10). After a thorough review of the arguments and relevant legal authority, and with good cause appearing, the court recommends that the motion be granted.

## I. BACKGROUND

At the time of the events alleged in his complaint, Plaintiff was in custody of the Nevada Department of Corrections as an inmate at Ely State Prison (ESP), which is a maximum security facility. Defendant Moore is a property correctional officer, Defendant Oxborrow is a caseworker, Defendant McDaniel is the warden of ESP, and Defendants Endel and Brooks are associate wardens. (Doc. #4 [Complaint] at 2.)

///

1

According to Plaintiff's civil rights complaint, brought under 42 U.S.C. § 1983, his television, coaxial cable, comb, and book were confiscated by Defendant Moore when he was transferred to the facility in April 2007. (Doc. #4 at 4.) Plaintiff alleges that this was in retaliation for the complaints he had previously filed against various prison officials. (*Id.*) Plaintiffs further alleges that Defendant Oxborrow harassed Plaintiff for filing a grievance related to this incident. (*Id.* at 5.) Finally, Plaintiff alleges that he wrote letters to Defendants McDaniel, Endel, and Brooks describing the incident and did not receive a response. (*Id.* at 6.) Plaintiff contends that he was unsuccessful bringing grievances through the administrative procedure at ESP. (*Id.*) Plaintiff seeks $500 in damages from each of the defendants and transfer to another NDOC institution. (*Id.* at 9.)

Based on these facts, Plaintiff alleges a claim for retaliation by Defendants Moore and Oxborrow for exercising his First Amendment right to file a grievance. Plaintiff also alleges a derivative claim of supervisory liability against Defendants McDaniel, Endel, and Brooks.

Defendants move to dismiss, arguing that Plaintiff did not properly exhaust his remedies before filing this lawsuit. (Doc. #6 at 9.) Plaintiff opposes the motion to dismiss, alleging that he exhausted the grievance process but that prison officials lost the forms. (Doc. #9 at 5.)

## II. LEGAL STANDARD

The Prison Litigation Reform Act provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court recently clarified that exhaustion cannot be satisfied by filing an untimely or otherwise procedurally infirm grievance, but rather, the PLRA requires "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). "Proper exhaustion" refers to "using all steps the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Id.* (*quoting Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules

2

because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91.

This court has interpreted Justice Alito's majority opinion in *Woodford* as setting forth two tests for "proper exhaustion": 1) the "merits test", which is satisfied when a plaintiff's grievance is fully addressed on the merits by the administrative agency and appealed through all the agency's levels, and 2) the "compliance test", which is satisfied when a plaintiff complies with all critical procedural rules and deadlines. *Jones v. Stewart*, 457 F. Supp. 2d 1131, 1134 (D. Nev 2006). "A finding that a plaintiff has met either test is sufficient for a finding of 'proper exhaustion'. Defendant must show that Plaintiff failed to meet both the merits and compliance tests to succeed in a motion to dismiss for failure to exhaust administrative remedies." *Id.*

The failure to exhaust administrative remedies is treated as a matter in abatement and is properly raised in an unenumerated Rule 12(b) motion. *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir.2003), *cert. denied*, 540 U.S. 810 (2003). Failure to exhaust administrative remedies is an affirmative defense, and Defendants bear the burden of raising and proving failure to exhaust. *Id.* A court, in deciding a motion to dismiss based on exhaustion, may look beyond the pleadings and decide disputed issues of fact without converting the motion into one for summary judgment. *Id.* (citing *Ritza v. Int'l Longshoremen's & Warehousemen's Union*, 837 F.2d 365, 368 (9th Cir. 1988) (per curiam)). If a court concludes that the prisoner bringing a suit has failed to exhaust nonjudicial remedies, "the proper remedy is dismissal of the claim without prejudice." *Id.* at 1120.

For prisoners within the NDOC system, exhaustion of administrative remedies requires complying with the Inmate Grievance Procedure set forth in NDOC Administrative Regulation 740 (AR 740). The administrative process consists of: (1) an Informal Level grievance that is reviewed and responded to by an inmate caseworker; (2) a First Level formal written grievance appealing the informal grievance decision to the warden at the institution where the inmate is housed; and (3) a Second Level grievance appealing the First Level grievance decision, which is decided by the Assistant Director of Operations. (Doc. #10 at DEF 10 [AR 740.02 § 1.1.1.1

(effective 1/5/04)].) If an inmate disagrees with the response to any grievance, he may appeal the grievance to the next level within the prescribed deadlines. (*Id.* at DEF 11 [AR 740.02 § 1.1.1.4].)

### III. DISCUSSION

Defendants properly bring an unenumerated Rule 12(b) motion to dismiss, arguing that Plaintiff failed to exhaust his administrative remedies for three reasons. First, Defendants contend that Plaintiff abandoned his informal grievance by refusing to discuss the matter with his caseworker. (Doc. #6 at 8.) In response, Plaintiff alleges that he filed an informal grievance numbered 2006-26-34777 on July 13, 2007 and subsequently met with a prison caseworker. Plaintiff claims that the caseworker was unhelpful and merely chastised Plaintiff for pursuing litigation against the prison staff. (*Id.* at 5.) Plaintiff contends that he never abandoned his informal grievance, but rather was threatened by his caseworker and correctional officers and therefore could not seek an informal resolution. (Doc. #9 at 4.)

Second, Defendants contend that he was ineligible for filing a First Level grievance after abandoning the one at the previous level, but that he did so anyway. (*Id.*) Defendants also argue that the grievance was filed one day late, as prison records indicate that he received his grievance on July 26, 2007, but did not file the his appeal until August 1, 2007. (Doc. #6 at DEF 50 [First Level grievance dated and signed August 1, 2007].) The Administrative Regulations indicate that an inmate has five days to appeal an Informal Level decision, which would give Plaintiff a July 31st deadline to file his grievance.[1] (Doc. #6 at DEF 15 [AR 740.02 § 1.5.1].) Plaintiff does not challenge the contention that his grievance was untimely, but argues that he had no choice but to file a First Level grievance after an informal resolution with Defendant Oxborrow proved to be unsuccessful.

Third, Defendants contend that Plaintiff never filed a final, Second Level grievance to completely exhaust the administrative process. Plaintiff alleges that he filed a Second Level

---

[1] In his complaint, Plaintiff indicates that the grievance was returned to him on July 16, 2007, which would make the First Level filing even more untimely. *See* Doc. #4 at 8.

4

grievance but that it was lost by the prison. (*Id.* at 5.)  In response, Defendants submit an affidavit from Associate Warden Endel indicating that no Second Level grievance was ever filed. (*Id.* at DEF 55, ¶ 15.)

Even assuming the truth of his other assertions relating to the Informal and First Level grievance process, Plaintiff failed to properly the exhaust the available administrative remedies for his claim.  First, Plaintiff failed to comply with the deadline requiring the First Level grievance to be filed within five days of receiving a response.  Second, his claim that he filed a Second Level grievance is not credible.  Plaintiff makes no reference to this grievance in his complaint.  In his opposition, Plaintiff for the first time alleges that all three grievances were filed on August 1, 2007.  This is inconsistent with the prison's electronic records, which show that the informal grievances was filed on July 13, 2007, as well as the allegation in his complaint that he filed his informal grievance on the same date.[2]  If Plaintiff filed all the grievances together, it is unlikely that only some of them would reach the Grievance Coordinator.  Inmates must personally place their grievances in locked boxes, and no other staff except the Grievance Coordinator and his designee have access to the key.  (Doc. #6, DEF 004 [AR 740.01 §§ 1.1 - 1.1.5]).  Furthermore, even if Plaintiff filed all grievances on the same date, this would violate the inmate grievance procedure, which requires the expiration of an applicable time period or an administrative response before the inmate may proceed to the next level of appeal.  (*Id.* at DEF 13 [AR 740.01 § 1.3.6]; DEF 15 [§ 1.5.1].)  Finally, Defendants have submitted a sworn affidavit demonstrating that a Second Level grievance was never filed by Plaintiff.  Therefore, the court finds that Plaintiff never filed a Second Level grievance.

As a result of failing to follow the procedural requirements of the Inmate Grievance Procedure, Plaintiff did not satisfy either the merits or compliance tests for proper exhaustion, as Plaintiff did not comply with the procedural mechanism ensuring that his complaint received proper review by the prison administration.  *See Stewart*, 457 F.Supp. at 1134.  As

---

[2] *See* Doc. #4 at 8.

5

such, the proper remedy should be dismissal without prejudice. *O'Guinn v. Lovelock Correctional Ctr.*, 502 F.3d 1056, 1059 (9th Cir. 2007). Defendants' request to dismiss the action with prejudice is denied, as the court need not reach the merits of Plaintiff's claims. *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 506 (2001) (dismissal with prejudice signifies adjudication the merits).

### III. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an Order **GRANTING** Defendants' Motion to Dismiss (Doc. #6) without prejudice.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within ten (10) days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1), Fed. R. Civ. P., should not be filed until entry of the District Court's judgment.

DATED: January 13, 2009.

_____
UNITED STATES MAGISTRATE JUDGE

6